# Bank of Commerce v. Eureka Brick & Lumber Co.

## *Garnishment on Summons.*

1. *Charge to jury.*—Where the only fault in a charge given the jury is that it is abstract, there is no ground for reversal, unless the court can see that the jury was probably misled by it.

2. *Appeal from order refusing new trial.*—This court will not reverse an order refusing a new trial on the ground that the verdict is con-, trary to the evidence, unless after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust.

APPEAL from Colbert Circuit Court.

Tried before Hon. H. C. SPEAKE.

The facts of this case are very fully set out in the opinion. The facts not set out therein, and which may be necessary to an understanding thereof, are as follows :

Upon the examination of W. H. Gillam, and after his testifying to transactions had with A. H. Keller, who, he testified, was the vice president of the Bank of Commerce, the plaintiff objected to any inquiry as to the transactions with and sale to A. H. Keller by the Tuscumbia Contracting Company, and moved to exclude all the testimony in reference thereto, upon the grounds that such testimony was illegal and incompetent in this suit, and was irrelevant to any issue involved in the cause. These several objections and motions were overruled, and the claimants separately excepted to such ruling. Upon the introduction of all the evidence, the court, at the request of the plaintiff, gave to the jury the following written charges : (1) "If the jury believe, from the evidence, that the notes for $2,800 and one for $500 were given to secure overdrafts of the Tuscumbia Contracting Company, and these notes represented the same debt sworn to be due on the pass book, then the bank can not claim both amounts." (2) "If the jury believe, from the evidence, that there was no claim or debt due to the bank from the Tuscumbia Contracting

Company at the time of the transfer of the claim against the Sheffield Machine Works, and no consideration for the transfer, then the transfer would be void as against creditors of the Tuscumbia Contracting Company; and, further, if the bank took the transfer in order to hinder and delay the creditors of the Tuscumbia Contracting Company, then such transfer is void, and they must find for the plaintiff." (3) "If the jury believe from all the evidence, that the bank, through its authorized agent, received settlement and payment in full of all legal and equitable claims it had against the Tuscumbia Contracting Company before the transfer of the contract, and that the transfer of the contract was made and accepted by the bank for the purpose of delaying and hindering the creditors of the Tuscumbia Contracting Company, then such transfer would be void." (4) "If Capt. Keller had authority to act for the bank, and did so act for the bank then the bank is bound by his action." The claimant separately excepted to the giving of each of these charges, and also separately excepted to the court's refusal to give each of the following charges requested by it: (1) "If the jury believe all the evidence in the case, their verdict should be for the claimant, the Bank of Commerce." (2) "The court charges the jury that the transfer of the contract on January 22, 1891, before the buildings mentioned in the contract were completed, was not fraudulent as to the plaintiff in this case, the Eureka Brick & Lumber Company, under this proceeding, and your verdict should be for the claimant, the Bank of Commerce." (3) "If the jury believe, from the evidence, that on January 22, 1891, the buildings provided in the contract to be built by the Tuscumbia Contracting Company had not been completed, then the plaintiff can not recover in this proceeding, and you should return a verdict for the claimant, the Bank of Commerce." (4) "The court charges the jury that the transfer of the contract on January 22, 1891, was not fraudulent as to the plaintiff, the Eureka Brick & Lumber Company, and your verdict should be for the claimant, the Bank of Commerce." (5) "The court charges the jury that when the contract mentioned in this case was transferred by the Tuscumbia Contracting Company, on January 22, 1891, to the Bank of Commerce, it could not be reached by garnishment or other proceeding at law, and the plaintiff in this

[Bank of Commerce v. Eureka Brick & Lumber Co.]

case, the Eureka Brick & Lumber Company, could not complain in this suit of the transfer of the contract by the contracting company. Such a transfer, at that time, when the buildings provided for by the contract, were not completed, was not fraudulent at law, and your verdict should be for the claimant, the Bank of Commerce." (9) "The court charges the jury that there is no evidence in this case contradicting the testimony that the Tuscumbia Contracting Company was indebted on January 22, 1891, to the claimant, Bank of Commerce, in the sum of $3,300 by note, and in the sum of $2,195.72 by overdrafts, and that the jury should be governed in forming their verdict by the evidence alone." (12) "If the jury find that the Tuscumbia Contracting Company was indebted to the Bank of Commerce, and that the said Bank of Commerce took the contract to do the work on the shops of the Sheffield Machine Works in good faith, and expended money to complete said work, then they must find for the claimant." (14) "The court charges the jury that whatever work Gillam may have done after the transfer to the Bank of Commerce, dated January 22, 1891, of the contract for the buildings for the Sheffield Machine Works, can have no effect upon this case." (15) "That the accounts between the Tuscumbia Contracting Company and A. H. Keller have nothing to do with this case." Upon the return of a verdict for the plaintiff by the jury, the claimant moved the court for a new trial upon the following grounds : "(1) That the verdict was contrary to the law and the evidence ; and (2) that the court erred in its rulings upon the evidence, and upon the charges given and refused. This motion was overruled, and the claimant duly excepted. There was judgment for the plaintiff. The claimant prosecutes the present appeal, and assigns as error the rulings of the trial court upon the evidence, the giving of the several charges asked for the plaintiff, the refusal to give the several charges requested by the claimant, and the overruling of the motion for a new trial.

ROULHAC & NATHAN, for appellant.

KIRK & ALLMAN, contra.

McCLELLAN, J.—The Eureka Brick & Lumber Co.

sued W. H. Gillam and James Keller, partners doing business under the firm name of Tuscumbia Contracting Co., and summoned the Sheffield Machine Works (Co.) in garnishment. The suit was instituted and the garnishment was issued and served on January 23d, 1891. The garnishee answered, in substance, that it was under a contract made with the defendants whereby it had undertaken to pay them for the erection of certain buildings, and that it was inbebted to the defendants or their assignee in that behalf, but that said contract was transferred and assigned to the Bank of Commerce on the day before service of said writ, i. e., January 22d, 1891; and that said bank claimed the money which it, the Machine Works, otherwise owed the defendants, &c., &c. The bank thereupon interposed its claim to this fund; it was contested by the plaintiff, chiefly, if not solely, on the ground that said transfer was fraudulent and therefore void as to the plaintiff, as a creditor of the defendants; an issue was made up between plaintiff and the claimant, presented to a jury under instructions by the court, found in favor of the plaintiff, and judgment upon the verdict was entered up, condemning the funds in the hands of the garnishee to the satisfaction of the judgment which plaintiff in the meantime had recovered against the defendants. A motion by claimant for a new trial was overruled; and from the judgment in the claim suit and the order denying said motion the Bank of Commerce prosecutes this appeal.

The said contract, and the right of defendants to the money due or to become due under it, was transferred as security for a debt which it is alleged they owed the bank, and not in payment of such debt; and in the writing of transfer there was a stipulation, in effect, that the defendants should complete the erection of the buildings according to the terms of the contract as modified in some particulars before this transaction. At the time of this transfer the defendants were largely indebted to others than the bank, and among the rest, it is alleged, to A. H. Keller. Their assets consisted of the money due and to become due under this contract, amounting to about seven thousand, one hundred dollars; building material and plant of the value of about three thousand, two hundred dollars; and bills receivable of the nominal value of about two thousand, six hundred dollars, but of

very little real value—probably not over one or two hundred dollars. Their debts largely exceeded these assets, and they were insolvent, though one of them testified as follows: "I thought [at the time of the transfer, January 22d, 1891] that if we had time to get our matters in shape and straight, and could complete our contract with the Machine Works Co., which was then uncompleted, we could pay our debts and have something over." They were then being pressed by their creditors; some suits against them had already been instituted, and this one was begun the next day. The bank held their notes for $3,300, and upon these A. H. Keller was bound as endorser. Keller also held individually their note for about $1,200, and upon a settlement of accounts then had it appeared that they owed him the further sum of about $950. They also, it is claimed, owed the bank on open account at that time $4,195.72, upon which $2,000 has since been paid. A. H. Keller is the father of James Keller, one of the defendants, and he was also a stockholder in and vice-president of the Bank of Commerce, claimant; and on or before January 22, 1891, they talked with him about their matters, and about his being secured or paid what they owed him, and also about the bank being secured by a transfer of this contract for the debt they owed it. As a result of this conference, the defendants on that day—January 22d—executed the transfer of the contract to the bank, and on the following day they executed to Keller individually a bill of sale to all their remaining property on a recited considertion of $5,785.90, but really in consideration of Keller's liability as endorser for them to the bank for $3,300, and the amount they owed him according to the settlement then made, viz. $2,485.90, or thereabouts. There is no question but that both these transactions resulted from discussion and negotiation commenced between the defendants and Keller and prosecuted together to consummation. There were both direct and circumstantial phases of the evidence to show that Keller had authority to act for the bank, and did represent and act for it in and about and throughout the transaction resulting in the transfer of the contract to it. Before either transaction was completed. Keller consulted his own lawyer about the sale to himself and the bank's counsel about

the transfer of the contract to it. He received affirmative advice in each instance; and thereupon both the sale and the transfer were agreed upon at the same time. The testimony already quoted from one of the defendants, Gillam, goes to show that it was their hope, desire and purpose by thus transferring all their property to gain time to get their "matters in shape and straight, and to complete their contract." The time and opportunity they hoped to gain was to be gained at the expense of other creditors, of course. Gillam further testified that, "When the sale to Keller was being arranged I told him I wanted to pay all of our creditors, and that I thought if we could get time to complete the contract with the M. & C. R. R. Co. [that transferred to the bank] we could pay them all, and that I was willing to make the arrangement if we could protect our creditors. He said if the sale was made to him, he would 'have 'em off, and do it quick.' I then consented to make the sale," &c. By the terms of the transfer to the bank the defendants were to complete the contract. Apparently they disabled themselves to do this by the sale of their building plant and material to Keller; but it is shown that this transaction involved an agreement between them and Keller by which they were to continue to use this plant and material to the completion of the buildings, the work being done by them in the name of Keller, and also, the evidence tends to show, that whatever, if any, balance should be due on the contract after paying the debt of the bank, should be paid to the defendants. The defendants continued for a time to work upon the buildings in Keller's name and with the material they had conveyed to him, but did not complete it. Keller continued the work, using the plant and material transferred to him by the defendants, and this sufficed except to the extent of about $450, which was advanced to Keller by the bank.

There was evidence in the testimony of Gillam tending to show that a mutual mistake had been made by the defendants and Keller in stating and settling the account between them at the time of the sale to him and the transfer to the bank, in this, that Keller was not charged with what he owed the defendants for building certain houses and cisterns for him and for the material used therein; and that these items more than balanced

the account between them leaving no debt from them to
Keller other than in respect of his endorsement of their
note for $3,300 to the bank.    On the other hand, A. H.
Keller denied the remark attributed to him by Gillam
to the effect that if the defendants would transfer their
property to him he would have off their creditors quick,
so as to give them time and opportunity to use that
property in the completion of their work under the con-
tract in his name.

There was also evidence tending to show that Keller
was not authorized to act and did not act for the bank
in the matter of effecting the transfer of the contract to
it, but that to the contrary the bank was represented in
that regard by its cashier.    The evidence for claimant
also tended to show that no mistake was made in the
settlement between Keller and the defendants, and that
they owed him the amount agreed upon on that settle-
ment.    And Keller denied that he had agreed to refund
to the defendants whatever should remain from the pro-
ceeds of the contract and property after the satisfaction
of the debts of the bank and himself, but said that as
one of the defendants was his son he "expected to turn
what balance should remain over to them after comple-
tion of contract and payment of debts, as all he wanted
was to lose nothing."

These divergent tendencies of the evidence presented
issues of fact which, so far as they were material, were
for the determination of the jury.    They had the right
to believe as true the facts which the phases of evidence
most favorable to the plaintiff went to establish; and
they might therefore have concluded—there was evi-
dence upon which they might have based their conclu-
sion—that the transfer of the contract to the bank and
the sale of the property to Keller were but parts of one
and the same transaction conducted and consummated
on one side by Keller for himself and the bank; that to
the knowledge of Keller and of the bank the defendants
were in an insolvent and failing condition; that it was
the purpose of the defendants to shield their tangible
property from process at the suit of other creditors, by
vesting it in Keller, so that they could go on in his name
in the use and consumption of property, with respect to
which other creditors were thus hindered and delayed
and defeated, to the completion of the contract for the

benefit of the bank primarily, and of A. H. Keller indirectly through a satisfaction of his liability as endorser on the note held by the bank; and, finally, that A. H. Keller, and through him the bank, knew of this purpose and participated in the attempt to effecuate it which it is the object of this suit to defeat so far as the debt of plaintiff is concerned. If the jury found these to be the real facts, as it was open to them to do, it was their right and duty to return a verdict for the plaintiff. And it follows of course that charges numbered 1, 2 and 4 which were requested by the claimant, and each of which was in substance an affirmative instruction to find the issue for the claimant, were properly refused.

Charge 12 refused to the claimant is misleading, if not otherwise faulty. It tended to obscure A. H. Keller's representation of the bank in the transaction and the latter's responsibility for his acts and intentions in its behalf. The jury might have believed that the bank itself, in a sense, took the contract without covinous intent, yet if they also believed Keller acted for and by authority of the bank, knew of such intent on the part of the transferrors, and participated in it by accepting or stipulating for the transfer as part and parcel of the sale of the other property to himself, that he might keep other creditors off of it and use it in completing the contract for the benefit of the bank, they should have found for plaintiff. This charge had a tendency to deny them this right in the contingency referred to. The charge is also abstract in respect of its hypothesis that the bank was to complete the work. By the terms of the transfer, the defendants undertook the full performance of the contract.

The several charges requested by the claimant to the effect, or proceeding upon the idea, that because the work stipulated for in the building contract had not been completed at the time of the transfer thereof, the proceeds could not be reached by garnishment, do not appear to be insisted upon in the argument of appellant's counsel. Moreover, in view of the evidence that though the work had not been completed, the defendants were at that time entitled, by the terms of the contract, to certain partial payments, it is clear that the sum of such payments could be reached by garnishment; it was money then due for which the defendants could

have maintained debt or assumpsit. On these considerations we feel that charges 2, 3 and 5 were well refused, charge 2 being bad also on another ground as we have seen.

Gillam testified that a short time before the transfer, Abbott the cashier of the bank told him that they, the Tuscumbia Contracting Company, owed the bank about $3,500. There is no evidence that this debt was increased in the short interval between the time of this alleged conversation and the transfer, to over $7,000. This was therefore *some* evidence that the defendants did not owe the bank this larger sum at the time of the transfer. Charge 9 was therefore well refused.

The fact that Gillam continued in the performance of the contract after its transfer, the work being done under cover of Keller's name, had some tendency to support the general theory, which finds lodgment in the evidence, that all that took place between defendants and A. H. Keller individually and as representing the bank was characterized by a purpose on both sides to keep the plant and building material out of the clutches of other creditors who were then pressing for payment, until this property could be applied to the completion of the work for the benefit of the bank to the extent of its debt, and as to the rest for the benefit of the defendants. The trial court very properly, therefore, refused to instruct the jury (charge 14) that this fact "could have no effect upon the case."

If the jury found, as they were authorized by the other evidence in the case to do, that the transfer of the contract to the bank and the sale of the building plant and material to A. H. Keller were one and the same transaction, that Keller acted for and by authority of the bank in the premises, and that the sale and the transfer were interdependent in that the property sold was to be devoted to the completion of the contract in A. H. Keller's name, they were entitled to look at all the facts and circumstances of alleged indebtedness of the defendants to A. H. Keller, whether they were primarily indebted to him at all, and to what extent if at all, in ascertaining and declaring the intent—whether covinous and fraudulent or not—with which the sale and transfer were made to Keller and the bank, respectively; and hence it is that all of the evidence to which objection

was made on the trial was properly allowed to go to the
jury, and hence also it is that the court did not err in
refusing to give charge 15 requested by the claimant, to
the effect that the accounts between the defendants and
A. H. Keller "have nothing to do with the case."

It is not argued, and cannot be maintained, that any
of the charges given at the instance of plaintiff are faulty
otherwise than for being abstract. It may be that some
of them are open to this objection, but, unless we can
see that the jury was probably misled by them, that is
not ground for reversal. *L. & N. R. R. Co. v. Orr*, 94
Ala. 602; *Ala. Gt. So. R. R. Co. v. Frazier*, 93 Ala. 45.

Guided by the principles laid down in the case of
*Cobb v. Malone & Collins*, 92 Ala. 630, we are unable to
affirm that the trial court erred in overruling the claim-
ant's motion for a new trial. The judgment of the cir-
cuit court must be affirmed.